1

Tanya D. Dennis
2027 Woolsey Street
Berkeley, CA 94703
(510) 638-2077

2

3

4



**FILED**

DEC − 9 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

5

6

7

8

9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

10

11

12

13

14

15

16

17

18

TANYA D. DENNIS,

     Plaintiff, Pro Per

vs.

WELLS FARGO BANK, N.A., ALSO KNOWN
AS WACHOVIA MORTGAGE, A DIVISION OF
WELLS FARGO BANK, N.A., AND
FORMERLY KNOWN AS WACHOVIA
MORTGAGE, FSB, FORMERLY KNOWN AS
WORLD BANK SAVINGS BANK, FSB., and
JOHN AND JANE DOES 1-5

     Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: C10-01596CW(LB)

**PLAINTIFF'S AFFIDAVIT IN
OPPOSITION TO
DEFENDENT'S MOTION FOR
SUMMARY JUDGMENT
BASED UPON FIFTEEN
MATERIAL FACTS IN DISPUTE**

Judge Claudia Wilken

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT WITH POINTS AND AUTHORITIES ......................... 4

    MATERIAL FACTS IN DISPUTE ................................................................. 8

I.     PRODUCTION OF ORIGINAL NOTE AND DEED ................................................. 8

II.    BREACH OF CONTRACT ................................................................................ 9

    FORENSIC LOAN AUDIT PROVES WRONGFUL FORECLOSURE .................... 10

III.     ILLEGAL COGNOVIT NOTE/BREACH OF CAL. CIV. CODE 1132(B) AND
1133/CONTRACT OF ADHESION ............................................................................ 11

IV.     RULES OF EVIDENCE ........................................................................ 17

V.      IMPROPER AFFIDAVIT ........................................................................ 17

VI.     DEPRIVATION OF DUE PROCESS RIGHTS ...................................................... 18

VII.    RETURN OF NOTE AND DEED PURSUANT TO U.C.C. 3-309 ........................... 19

VIII.   PLAINTIFF WAS VICTIM OF MISREPRESENTATION/FRAUD ....................... 20

IX.     PREDATORY LENDING ........................................................................ 21

X.      IN SUPPORT OF RICO CLAIM .............................................................. 21

XI.     FAILURE TO PROPERLY ANSWER DISCOVERY ............................................. 24

XII.    TENDER CANNOT BE REQUIRED UNDER VOID CONDITION ...................... 24

XIII.   INDUSTRY-WIDE PRACTICES FOUND FRAUDULENT .................................. 26

XIV.    WELLS FARGO NEVER HAD STANDING .................................................... 27

XV.     DECLARATORY RELIEF WARRANTED ..................................................... 28

        CONCLUSION.......................................................................... 30

1   Tanya D. Dennis
    2027 Woolsey Street
2   Berkeley, CA 94703
    (510) 638-2077
3

4

5

6

7

8                       UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION
9

10  TANYA D. DENNIS,                        )
                                            )   Case No.: C10-01596CW(LB)
11          Plaintiff, Pro Per              )
                                            )
12      vs.                                 )
                                            )   **PLAINTIFF'S AFFIDAVIT IN**
13  WELLS FARGO BANK, N.A., ALSO KNOWN      )   **OPPOSITION TO**
    AS WACHOVIA MORTGAGE, A DIVISION OF )      **DEFENDENT'S MOTION FOR**
14  WELLS FARGO BANK, N.A., AND             )   **SUMMARY JUDGMENT**
    FORMERLY KNOWN AS WACHOVIA              )   **BASED UPON FIFTEEN MATERIAL**
15  MORTGAGE, FSB, FORMERLY KNOWN AS        )   **FACTS IN DISPUTE**
    WORLD BANK SAVINGS BANK, FSB., and      )
16  JOHN AND JANE DOES 1-5                  )
                                            )
17          Defendants                      )   Judge Claudia Wilken
                                            )
18  _____)

19

20      To ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP.

21      I, Tanya Dennis, hereinafter referred to as Plaintiff or MS. DENNIS, am over the age of

22  eighteen and of sound mind and competent to make the following declaration and hereby swear

23  and affirm the truthfulness and accuracy of the following statements based on my own personal

24  knowledge. Plaintiff hereby submits this Opposition to Summary Judgment which was filed by

25  Defendants WELLS FARGO BANK, N.A., ALSO KNOWN AS WACHOVIA MORTGAGE, A

26  DIVISION OF WELLS FARGO BANK, N.A., AND FORMERLY KNOWN AS WACHOVIA

27  MORTGAGE, FSB, FORMERLY KNOWN AS WORLD BANK SAVINGS BANK, FSB., and

28  JOHN AND JANE DOES 1-5, hereinafter referred to as WELLS FARGO. Plaintiff states for the

                        OPPOSITION TO SUMMARY JUDGMENT - 3

1   record that like previous documents in this matter, she was never served the Defendant's motion

2   and has filed an affidavit stating such on Dec. 3, 2010. Plaintiff is now responding to Motion for

3   Summary Judgment based on a Notice for Extension of Time she received from Judge Jellen

4   without her awareness of improper service and which only allowed her 7 days to respond. For

5   the record, Plaintiff objects to this continued abuse, deserves to have her case fully adjudicated,

6   and based upon the merits of her claims supported by facts and law, will establish that Summary

7   Judgment cannot be granted due to a myriad of triable issues. Although Plaintiff has established

8   that Defendant's Motion for Summary Judgment should be refused and taken off calendar due to

9   the fact she was never served, she provides detail herein why Plaintiff's Motion For Summary

10   Judgment must be denied.

## PRELIMINARY STATEMENT WITH POINTS AND AUTHORITIES

13   1.   For the record Plaintiff hereby sets forth the standards for summary judgment as

14   established by numerous federal court rulings.

15   2.   We review de novo a grant of summary judgment and must determine whether,

16   viewing the evidence in the light most favorable to the nonmoving party, there are any genuine

17   issues of material fact and whether the district court correctly applied the relevant substantive

18   law. See *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999).

19   3.   We commence with a review of well-established principles governing the

20   granting of summary judgment. Summary judgment is improper unless there is "no genuine

21   issue as to any material fact," and a party is "entitled to a judgment as a matter of law."

22   Fed.R.Civ.P. 56(c). "The burden is on the moving party "to demonstrate the absence of any

23   material factual issue genuinely in dispute." *Heyman v. Commerce & Industry Insurance Co.*,

24   524 F.2d 1317, 1319-20 (2d Cir. 1975).

25   4.   This Court is noticed that the Plaintiff is a pro se litigant. In ruling on a motion

26   for summary judgment, the allegations in a pleading of a pro se litigant are entitled to a less

27   stringent standard than formal pleadings drafted by lawyers. *Reynolds v. Wolff*, 916 F. Supp.

28   1018 (D. Nev. 1996). *In re Haines*: pro se litigants are held to less stringent pleading standards

OPPOSITION TO SUMMARY JUDGMENT - 4

than bar licensed attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims. *In re Platsky*: court errs if court dismisses the pro se litigant without instruction of how pleadings are deficient and how to repair pleadings. *In re Anastasoff*: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a constitutional right to have their claims adjudicated according to the rule of precedent. See *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000).

5.     This court is also noticed on the following point of law: statements of counsel, in their briefs or their arguments are not sufficient for a motion to dismiss or for summary judgment, *Trinsey v. Pagliaro*, D.C. Pa. 1964, 229 F. Supp. 647. Prevailing party on default judgment of liability must still prove damages, *American Red Cross v. Community Blood Center of the Ozarks*, 257 F.3d 859 (8th Cir. 07/25/2001).

6.     In making the determination of whether there is an issue of triable fact, the Court will view the evidence in the light most favorable to the party opposing the motion, affording that party the benefit of every reasonable inference. See *Boyce v Vazquez*, 249 AD2d 724, 726 [1998]; *Simpson v Simpson*, 222 AD2d 984, 986 [1995]. The adversary's version of the facts must be accepted with respect to all points as to which there is a bona fide controversy of fact (*Cannon v Pfleider*, 19 A.D.2d 625).

7.     In determining whether or not there is a genuine factual issue, the court should draw all reasonable inferences against the moving party. *United States v. Diebold*, Inc.,369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962) (per curiam).

8.     Inferences must also be drawn in the light most favorable to the nonmoving party. *Anderson,* 106 S.Ct. at 2513; *Matsushita,* 106 S.Ct. at 1356-57. Inferences may be drawn from underlying facts that are not in dispute, such as background or contextual facts, *see id.* at 1356; *Cities Serv.,* 391 U.S. at 285-86, 88 S.Ct. at 1590-91, and from underlying facts on which there is conflicting direct evidence but which the judge must assume may be resolved at trial in favor of the nonmoving party.

9.     And according to the 9th Circuit Appeals Court in *TW Elec. Service v. Pacific Elec. Contractors*, 809 F. 2d 626, "at summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Put another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Matsushita*, 106 S.Ct. at 1356; *Cities Serv.*, 391 U.S. at 289, 88 S.Ct. at 1592.

10.     The summary judgment remedy is appropriate only when there is no genuine issue of material fact. See Fed. R. Civ. P. 56(c). To support a motion for summary judgment, "the moving party [has] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970).

11.     This court is also noticed on the following point of law: If moved to do so, a court does not have discretion to refuse to take judicial notice of facts that admit of controversy. As proclaimed in FRE Rule 201(b)(2). A judicially noticed fact must be one not subject to reasonable dispute in that it is either... (2) capable of accurate and ready determination by resorting to sources whose accuracy cannot reasonably be questioned.

12.     This court has actual knowledge of the law to the effect that this court knows that a motion for summary judgment is "not a trial based on affidavits" *Hidden Wells Ranch, Inc. v. Strip Realty, Inc.*, 83 Nev. 143, 425 P.2d 599 (1967) (Rule 56 does not authorize "trial by affidavits"). *Short v. Hotel Riviera, Inc.*, 79 Nev. 94, 378 P.2d 979 (1963), but the court must consider the factual materials of record to determine whether triable issues are disputed, and even if not disputed, whether reasonable persons could come to differing conclusions regarding the facts of record.

13.     The party opposing a motion for summary judgment is entitled to all favorable inferences from the pleadings and documentary evidence. In considering the motion, the court's

responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. See *Anderson v. Liberty Lobby*, Inc.,477 U.S. 242, 106 S. Ct. 2505, 2509-11, 91 L. Ed. 2d 202 (1986). Summary judgment motions which are not supported by any competent evidence should not be considered. See, <u>*Hosmer*, at 587, 636 P.2d at 876.</u>

14.     Viewing the evidence in the light most favorable to the non-moving party, summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Plaintiff's material facts in dispute herein clearly show that under the standards of summary judgment, WELLS FARGO fails in its burden to show prima facie evidence that there are no triable issues, and its motion must fail as a matter of law.

15.     Attorney for WELLS FARGO, Christopher Carr has now put forth a completely defective Motion for Summary Judgment, devoid of any evidence from a competent fact witness with first-hand knowledge that can authenticate anything in accordance with the Federal Rules of Evidence. He makes vague, general allegations against Plaintiff's claims which are insufficient to negate Plaintiff's evidence that she has been a victim of many unscrupulous business practices committed by Defendants as detailed herein as well as her Verified Complaint.

16.     To illustrate, Mr. Carr states that there does not appear to be any dispute of Defendant's claim other than a possible "non-issue" regarding possession of the original notes. Plaintiff strongly refutes such an inaccurate statement which is obviously untrue with even a superficial review of her Verified Complaint supported by exhibits, Memorandum of Law, and Affidavit which disputes numerous facets dealing with predatory lending, many contractual issues, deprivation of rights, securitization, declaratory and injunctive relief, all connected to wrongful foreclosure. The number of material facts in dispute herein are evidence of the scope of controversy that exists for which Plaintiff has been harmed and is entitled to relief.

17.     Plaintiff, TANYA DENNIS, hereby declares that this Affidavit in Opposition of Summary Judgment substantiates that there are indeed **fifteen material facts** in dispute that thoroughly contradict the Defendant's motion as set forth below.

## MATERIAL FACTS IN DISPUTE

### I.     PRODUCTION OF ORIGINAL NOTE AND DEED

18.     Defendant has testified before a proposed Settlement Management Conference and an Affidavit filed on Sept. 13, 2010, as well as attorney Chris Carr's Declaration in support of the Motion for Summary Judgment that Defendant has Plaintiff's original Note and Deed. Plaintiff has challenged this claim and accepts Mr. Carr's offer to produce such Loan Documents.

19.     Defendant Attorney Christopher Carr consistently states and is willing to testify in court as an expert witness that WELLS FARGO is the owner and holder of the Note and Deed of Trust, that both of which are held by their Custodian of Records at 4101 Wiseman Boulevard, San Antonio, Texas 78251.

20.     Possession of the note in Plaintiff's case is vital, not in order to foreclose, but in order to guarantee that no fraudulent tampering has occurred. (See Exhibit - Doc X)

21.     For this Court to grant summary judgment without ever reviewing such executed agreement and additional documentation that has been authenticated as true and correct and qualifies as admissible evidence would be a gross violation of the plaintiff's due process rights and a true travesty upon justice. Defendant failed to attach the alleged contract to the Complaint as required by law. Where the original Debt Instrument containing a promise to pay (i.e., a promissory note) is not produced, then the court must take notice that no such instrument exists.

22.     Despite Mr. Carr's offer to produce the original Note and Deed for inspection, Defendant contends that possession of the original notes and deeds of trust for the two subject loans is irrelevant to any of the legitimate issues in this as to any material facts at all.

23. However, inspection is absolutely necessary for many reasons, including but not limited to (1) the recent news revelations of document fraud, (2) evidence of break in chain of title which would materially alter and invalidate the status of Defendant's claims, (3) evidence of invalid assignment and/or transfer of the Loan Documents, and (4) evidence of the true holder in due course with proper creditor status to claim payment.

24. Defendant must not be allowed the Motion for Summary Judgment until he presents said documents to the court, and Plaintiff's forensic document expert.

## II. BREACH OF CONTRACT

25. Plaintiff contends that the Notes and Deed of Trust were a contract between Plaintiff and WORLD BANK and that they are the predominant legal authorities. WELLS FARGO expects Plaintiff to abide by the terms of the contract, therefore Plaintiff demands that WELLS FARGO play by the same rules. They have not. Defendants breached Plaintiff's contract when they sold their interest (note) in January 2007. (Exhibit - Forensic Loan Audit)

26. Plaintiff's Deed of Trust has no provision for the securitization of her Note(s). The forensic loan audit affidavit clearly indicates that the Plaintiff's first and second mortgage have been securitized. Securitization is distinctly different that selling a note to different servicer or private investor.

27. Another aspect of securitization is illegal conversion. Conversion is defined as:

"An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights. Any unauthorized act which deprives and owner of his property permanently or for an indefinite time. Unauthorized and wrongful exercise of dominion and control over another's personal property, to exclusion or inconsistent with the rights of owner." BLACK'S LAW DICTIONARY, 5th ed., at 300.

28. In fact, Defendants committed "Direct Conversion," which is defined as:

"The act of actually appropriating the property of another to his own beneficial use... or that of a third person, ... or altering its nature, or wrongfully assuming title in himself." Id. at 300.

29. This act of conversion is further clarified: "It is an essentially tortuous act, an unlawful act, an act which cannot be justified or excused in law." BALLENTINE'S LAW DICTIONARY, 3rd ed., at 269, quoting 18 AmJur2nd, Conversion, §1...

30. Plaintiff wound up obligated to a party with which she did not contract with, Fidelity Puritan Fund and Fidelity Bio-Tech Fund, in breach of privity of contract.

31. Additionally, the Deed of Trust states that the "Deed is evidenced by the Note". However, when a Note is securitized it is split, or bifurcated, from the Deed of Trust, which is also a breach of contract. (See *Adler v. Sargent* (1895) 109 Cal. 42, 49). A "mortgagee's purported assignment of the mortgage without an assignment of the debt which is secured is a legal nullity." (*Kelly v. Uspahaw* (1952) 39 Cal.2d 179, 192.) Furthermore, "[a]n assignment of the note carries mortgage with it, while assignment of the latter alone is a nullity." *In Re Leisure Time Sports, Inc., 194 B.R. 859, 861 (9th Cir. 1996)* See also, Restatement (3d) of Property (Mortgages) § 5.4, stating that, "[a] mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation that the mortgage secures." (emphasis added)

32. Mr. Carr has more than once asked what FIDELITY BIO TECH FUND would want with my second note that they have bundled into their hedge fund. The answer is "money and profit". The entire subprime feeding frenzy and subsequent economic meltdown of 2008 was based on millions of predatory loans, such as this one, which were destined to fail yet were a source of immediate profit and fodder for Wall Street's mortgage-backed asset pools which were sold around the world.

33. On this basis alone, a trial is warranted and this motion cannot be granted.

## III. FORENSIC LOAN AUDIT PROVES WRONGFUL FORECLOSURE

34. Plaintiff's forensic audit by an expert witness who is willing to testify in court, is prima facie proof that Plaintiff's loans were illegally converted into these collateralized debt obligations for the purpose of hidden compound profits without Plaintiff's knowledge and consent, and without due consideration given her for use of her Instrument and credit. This is

also proof that the original trust itself did not actually deliver the original Loan Documents to Defendant WACHOVIA or Defendant WELLS FARGO's possession.

35.    The audit fundamentally establishes there were fatal breaks in the chain of title. These types of practices were prevalent during the last decade and the audit shows that this case is no different.

36.    Furthermore, the expert witness has located Plaintiff's actual Promissory Note in a FIDELITY hedge fund and has negotiated to purchase it, which is also included in this Exhibit.

37.    Since Defendant still claims to be the party that possesses the Note and Deed, let them produce it for Plaintiff's forensic document expert as has been offered, to determine who is the actual real-party-in-interest.

38.    On this basis alone, a trial is warranted and this motion cannot be granted.

## IV.    ILLEGAL COGNOVIT NOTE/BREACH OF CAL. CIV. CODE 1132(B) AND 1133/CONTRACT OF ADHESION

39.    In Defendants Motion for Summary Judgment, Defendant ridicules "cognovit notes as "bizarre facts" denigrating a ruling by the Supreme Court that states "a cognovit note is the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney designated by the debtor." He even refers to this claim as "mere fantasy). But Defendant has also done all he could to ensure that Plaintiff was not given the opportunity to show the Court that her claim is true.

40.    Mr. Carr conspicuously fails to address the basic fact that key terms such as "seised", "waived", "irrevocably", "power of sale", "presentment", "grant and convey", which Plaintiff has realized after research, are all terms resulting in the waiving of Plaintiff's rights through confession of judgment. These terms and this critical fact about the waiving of rights were never explained. This is a material breach of Cal. Civ. Code § 1132(b) and 1133 which states:

1132 (b)  A judgment by confession shall be entered only if an attorney independently representing the defendant signs a certificate that the attorney has examined the proposed judgment and has advised the defendant with respect to the waiver of rights and defenses under the confession of judgment procedure and has advised the defendant to utilize the confession of judgment procedure. The certificate shall be filed with the filing of the statement required by Section 1133.

1133.  A statement in writing must be made, signed by the defendant, and verified by his oath, to the following effect:

1. It must authorize the entry of judgment for a specified sum;

2. If it be for money due, or to become due, it must state concisely the facts out of which it arose, and show that the sum confessed therefor is justly due, or to become due;

3. If it be for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting the liability, and show that the sum confessed therefor does not exceed the same.

41.     Plaintiff notices the Court that Isbell v.Sonoma County makes it very clear that a corporation has a duty to deal equitably when contracting with members of the public and that the public has legal recourse when a corporation subjects them to a contract in which there is a disproportionate control of power by the corporation over individuals.

"A confession of judgment is not valid when it is not accompanied by an independent attorney's certificate or declaration such as that required under Ca. Civ. Code of Proc. § 1132(b) so that the confessed judgment is shown clearly on its face to been given voluntarily, knowingly, and intelligently after receiving independent legal advice..." (Isbell v. County of Sonoma (1978), 21 Cal. 3d, 61, 64, 74, 145 Cal. Rptr. 368.

42.     However, WORLD BANK SAVINGS and its agents clearly practiced concealment and misrepresentation by failing to comply with this statute, which resulted in Plaintiff lacking the understanding of all the terms and conditions of what she was agreeing to, therefore, it was impossible for a contract to actually be formed according to the laws of contract. Plaintiff was under the reasonable expectation that she was being dealt with fairly and equitably, and with full disclosure which did not occur.

43.     Ultimately, Plaintiff never knowingly, intelligently and intentionally meant to waive her rights and had she known the true ramifications of what the cognovits phrases meant,

1    and had she known the ramifications of the interest rate structure, she would have never agreed.

2    Plaintiff asserts that no one in their right mind would agree, and that under this constitutional

3    republic, one's primary rights cannot be waived.

    A court cannot render judgment against a defendant without according the due process
    rights of notice and an opportunity to be heard, unless the defendant voluntarily,
    knowingly, intelligently waives these rights [*Isbell V. County of Sonoma* (1978) 21 Cal.
    3d 61,64,66,74,145 Cal. Rpstr. 368,577 p.2d 188; *Efstratis V. First Northern Bank of
    Dixon* (1997) 59 Cal. App 4th 667,672,69 Cal Rpstr. 2d 445]

8        44.    Justice Blackmum, expressing the unanimous view of the court in *Overmyer v.*

9    *Frick*, 405 U.S. 174, 92 S.Ct 775, L.Ed.2d 124 (1972), stated the criteria for establishing

10   constitutionality of a Cognovit Note is not determined upon the theory of the note but the

11   method used by both parties to afford each other due process protection afforded by the

12   Fourteenth Amendment. (emphasis added)

13       45.    Justice Blackmum stated, "...[i]t was held that (1) a cognovit clause was not, per

14   se, violative of the Fourteenth Amendment due process requirements as to prejudgment notice

15   and hearing, and (2) under the facts in the instant case, (Overmyer) due process was not violated

16   by the entry of the confessed judgment, since the record established that the debtor had

17   knowingly and voluntarily waived its rights to notice and hearing, with full awareness of the

18   legal consequences, by executing the cognovit note, which was supported by consideration from

19   the creditor, and which had resulted from negotiations between the parties of equal bargaining

20   power,..." Id (emphasis added)

21       46.    Plaintiff asserts that not only was she not informed of the meanings of the

22   cognovits terms, she was never given special consideration, and there were never negotiations

23   between her and WORLD SAVINGS BANK dealing as parties of equal bargaining power. She

24   was enticed into this arrangement and was never afforded options to negotiate.

25       47.    Justice Douglas, joined by Justice Marshall concurring, stated, in effect that, (1)

26   the record must establish that a clear and unmistakable, voluntarily and intelligently valid

27   waiver of the debtor's constitutional rights, (2)... a trial judge was required to vacate a

28   judgment obtained through a cognovit clause when presented sufficient evidence of an

OPPOSITION TO SUMMARY JUDGMENT - 13

affirmative defense to pose a jury question, a preponderance of evidence burden not being imposed, and (3) and, the preponderance of the evidence in the (present) case does not support even a conclusionary finding that Plaintiff was even aware of the existence of any cognovit note, let alone intentionally, deliberately, knowingly and intelligently waive his due process rights.

48.    Justice Douglas, further observed, "Debtors receive the benefit of credit at a lower rate of interest than they would receive if they did not give the creditor the right to confess judgment against them. Nevertheless, the right to be heard in court is central to our system of justice, and, as with other constitutional rights, there is no presumption of waiver. *Overmyer, 405. U.S. 174, 31 L. 2d 124, 92S.Ct. 775 (1972)* and its companion case, *Swarb v. Lennox, 405 U.S. 191, 31 L. ed.2d 138, 92 S.Ct. 767 (1972) and at 186, 188.*(emphasis added)

49.    Due to the fact that WORLD SAVINGS BANK, FSB failed to explain the cognovit clauses contained in the Loan Documents to Plaintiff at the closing on Feb. 16, 2006, they have deceived Plaintiff, without her awareness into waiving her Fifth and Fourteenth Amendment rights, and into unknowingly signing a cognovit note through a contract of adhesion, without proper warning, and without special consideration.

50.    A cognovit note and contract of adhesion presented by WORLD SAVINGS BANK, FSB willfully put the Plaintiff in a position of disparity and disadvantage due to the overwhelming advantage and bargaining power held by them as Lender and Trustee.

51.    Absent proper disclosure and acceptance by both parties, contracts of adhesion are either procedurally and/or substantively unconscionable and, the unconscionability factor alone, should void the cognovit clause of this or any adhesion contract. Absent an attorney's affidavit as required by Cal. Civ. Code § 1132(b) and 1133, Defendant cannot prove that the Deed of Trust and Note were properly executed and are enforceable. To the contrary, they are unenforceable and void.

A contract is procedurally unconscionable if it is a contract of adhesion, i.e., a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it. Armendariz, 99 Cal.Rptr.2d 745, 6 P.3d at 690 (citing *Neal v. State Farm Ins. Co.*, 188

Cal.App.2d 690, 10 Cal.Rptr. 781 (1961)); see also Circuit City, 279 F.3d at 893; *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 113 Cal. Rptr.2d 376, 382 (2001) ("A finding of a 1149*1149 contract of adhesion is essentially a finding of procedural unconscionability."). In finding the CSA procedurally unconscionable, the district court emphasized that, after drafting the agreement, AT&T imposed the CSA on its customers without opportunity for negotiation, modification, or waiver. We agree. AT&T mailed the CSA in an envelope that few customers realized contained a contract, and offered its terms on a take-it-or-leave-it basis. Cf. *Flores*, 93 Cal.App.4th at 853-54 <u>(holding that generic arbitration clauses contained in loan agreement and deed of trust constituted a contract of adhesion because offered without opportunity for negotiation)</u>. (Emphasis added)

52.    Plaintiff was subjected to an unconscionable contract which is a violation of the Covenant of Good Faith and Fair Dealing, and UCC 2-302. As Official Comment 1 to § 2-302 of the Uniform Commercial Code suggests, "[t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Cheshire Mortgage Service, Inc. v. Montes, 1992*

53.    Overall, Plaintiff notices the Court that:

a.  The Deed of Trust/cognovit note/contract of adhesion was a take it or leave it offer and the cognovit clause(s) were at no time ever an issue raised by the Defendants during any signing ceremonies.

b.  WORLD SAVINGS BANK, FSB never gave Plaintiff any extra consideration in order to legally obtain any confession(s) of judgment (cognovit note(s)) clause.

c.  There was no contention or acknowledgment evidenced in the Loan Documents that the Plaintiff was aware of the legal (detrimental) consequences of the cognovit provisions.

d.  WORLD SAVINGS BANK, FSB never provided clear warning that Plaintiff was being led to waive her rights and ownership to her property.

e.  The cognovit(s) was not issued under any other substantial benefit and/or consideration to Plaintiff including and not limited to a reduction in installment payments or reduction in interest rates.

OPPOSITION TO SUMMARY JUDGMENT - 15

## V.   RULES OF EVIDENCE

56.   The threshold element in any breach of contract action is the existence of a contract. Failure to produce the original executed agreement is a violation of **F.R.E. 1002**, and failure to produce an authenticated copy of an executed agreement is in violation of **F.R.E. 803.6, 901,** and **902.11**.

57.   Defendant's allegations are based on inadmissible evidence. In its motion, defendant relies on hearsay statements of an affiant and unsubstantiated assertions by the attorney of record, which are addressed in detail herein. Evidence introduced in support of or opposition to a motion for summary judgment must be admissible evidence.

58.   Defendant's attorney states in support of its motion for summary judgment that it relies on "exhibits contained herein" to establish that Plaintiff defaulted on her Deed of Trust in the amount of $25,000.00 plus interest, costs and disbursements incurred, stating that "plaintiff entered into a promissory note contract. However, none of the defendant's Exhibits are authenticated as true and correct by a witness with firsthand knowledge as required under Federal Rules of Evidence and so, therefore, are inadmissible into evidence under governing law. Certainly, Defendant has not provided any accounting ledgers, which all FDIC-insured banks are required to maintain, proving money lent from lender's net worth account and damages sustained. For all we know, there may have been a third-party investor involved which often occurs in real estate transactions. In any event, there is no authenticated financial record as proof of money lent or default sustained.

## VI.   IMPROPER AFFIDAVIT

59.   Defendant's motion is not supported by a competent fact witness with personal knowledge but only a conclusory affidavit signed by one Christopher Carr, who is employed by WELLS FARGO BANK, N.A. Mr. Carr, does not comply with the rules of filing a sufficient affidavit. Yet he is asking this court for Summary Judgment based on unauthenticated hearsay evidence, and his own testimony which is a violation of the attorney code of ethics. A lawyer cannot both prosecute a case and testify and this Court cannot allow such a violation to occur.

60.     Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a "burden" of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.

61.     Based on the failure to provide a proper affidavit by someone with first-hand knowledge who attaches admissible evidence pursuant to FRCP 56, a motion for summary judgment is defective and cannot prevail.

## VII.     DEPRIVATION OF DUE PROCESS RIGHTS

62.     The Fifth and Fourteenth Amendments state in pertinent part that "no person shall be deprived of his life, liberty, or property without due process of law; or denied equal protection of the laws." However, this is exactly what has occurred from inception with the inducement into a predatory loan and confession of judgment. The accumulation of facts presented by Plaintiff makes it clear that between the fraud and misrepresentation that took place and the deliberate and malicious practices by WELLS FARGO to blind side her by foreclosing on her by side-stepping a TRO she had obtained in state court, failing to serve her properly pertaining to subsequent hearings, WELLS FARGO scheduled foreclosure and took back her property without her knowledge, without her ability to take action to defend herself. This is well documented throughout Plaintiff's pleadings.

63.     Defendant claims there are defects in the entire complaint stating statement Plaintiff has made in Plaintiff's brief (i.e. my signing an illegal cognovit note, was mere fantasy) but Defendant has also made sure, that Plaintiff was not given the opportunity to show the Court that her claims are factual.

64.     Plaintiff's due process rights have consistently been violated and this court would be making a tragic mistake by granting summary judgment because there are fifteen material facts in dispute proving Defendant has no foundation or standing to foreclose.

## VIII.   RETURN OF NOTE AND DEED PURSUANT TO U.C.C. 3-309

65.   The official UCC commentary to Section 3-309 states that: "Judgment to enforce the instrument cannot be given unless the court finds that the [plaintiffs] will be adequately protected against a claim to the instrument by a holder that may appear at some later time."

66.   Allowing the foreclosure to stand without the return of her Loan Documents will render Plaintiff as a potential victim in the stream of commerce, leaving Plaintiff vulnerable to double jeopardy by a future debt collection action, for a debt that has already been paid for and received by Defendant WELLS FARGO, which is a violation of Plaintiff's rights.

67.   The official UCC commentary to Section 3-309 states that: "Judgment to enforce the instrument cannot be given unless the court finds that the [Plaintiff] will be adequately protected against a claim to the instrument by a holder that may appear at some later time."

68.   California has adopted the 1990 revision of Article 3, Negotiable Instruments and follows the text of this article. §3-603:43 states in relevant part: "A person paying or otherwise satisfying an instrument must obtain possession of it in order to protect himself or herself from the possibility of a subsequent transfer to a holder in due course who will be able to enforce the instrument according to its terms....UCC §3-603 protects a party from double liability after having paid the holder the full amount of the paper." ANDERSON ON THE UNIFORM COMMERCIAL CODE (3rd ed., revised 1998) at 331-32.

69.   The Uniform Commercial Code makes it clear that Defendant WELLS FARGO cannot take Plaintiff' property and keep possession of Plaintiff' Loan Documents which are negotiable instruments that can have further effect in the stream of commerce. Defendant SLS chose to foreclose without returning Plaintiff' Security Instruments, leaving Plaintiff vulnerable to debt collection actions by some future unknown party on the same debt.

70.   Mr. Carr states - another "bizarre fact" that the Defendant notes is the claim that "I paid the loan with bonded promissory notes". Plaintiff did legally create bonded promissory notes which are negotiable instruments under law. WACHOVIA received them and did not object or return them. They should now be in WELLS FARGO's possession. Otherwise, they securitized them, yet, failed to give Plaintiff credit for paying off her home.

71.     Also, since Defendants did not apply the Bonded Promissory Notes to the loan balance, they must now return the notes which are left in the stream of commerce.

72.     With this dispute alone, summary judgment cannot be granted and this case must proceed to trial.

## IX.     PLAINTIFF WAS VICTIM OF MISREPRESENTATION/FRAUD

73.     Defendant's Attorney Christopher Carr also states that many of the numerous claims brought forth have exceeded the statue of limitations. There is no statute of limitations on fraud. To constitute fraud, a false statement must be made with the intent to deprive the victim of some legal right. Furthermore, Plaintiff only just discovered the fraud in her contract with WORLD BANK last year.

74.     Therefore Defendant's statement that claims regarding loan origination are time barred will not hold up since the contract was fraudulent, and is void. WORLD BANK made false representations to Plaintiff in words and conduct, by false and misleading statements and by concealment of what should have been disclosed.

75.     WORLD BANK deceived and intended to deceive Plaintiff so that Plaintiff acted upon Defendant's word to her detriment.

76.     Predatory lending practices, concealment of critical phrases in the Deed of Trust illegally causing confession of judgment amount to fraud which Plaintiff can prove. For instance, Plaintiff has records from Feb. or Mar. of 06, from Gurnam Singh from Washington Financial Services who "cold called" her informing her there was equity in her home and that she qualified for a loan. He told her that World Bank had a pic-a-pay program that would make the loan affordable. He asked me some questions regarding my employment. I indicated I was a school teacher. He said "You know you can go stated, and not have to report your income."

77.     Plaintiff states that Defendants committed fraud when WORLD SAVINGS BANK never gave Plaintiff any extra consideration in order to legally obtain any confession of judgment (cognovit note(s)) clause.

78.    Plaintiff states that Defendants committed fraud when WORLD SAVINGS BANK FSB never provided clear warning that Plaintiff was being led to waive her rights and ownership to her property.

79.    Converting Real Property from its true owner without true owner's knowledge and consent to WORLD BANK, FSB or Defendants is an act of "conversion through fraudulent means", also which Plaintiff can prove.

80.    Defendants claims that any claim Plaintiff is making regarding Loan Origination is preempted as a result that state claims are preempted by the lending practices of federally chartered savings banks.  Fraud, a federal offense precludes fraudulent loan origination documents from being pre-empted.


## X.    PREDATORY LENDING

81.    Plaintiff has made it very clear in her Verified Complaint that WORLD SAVINGS BANK was notorious for taking advantage of the public through predatory lending practices, specifically "Pick-a-Pay" loans. WORLD SAVINGS BANK was even the subject of an exposé on "60 Minutes" on CBS. Defendant's attorney, Chris Carr, never disputes this.

82.    A statement need not be affirmative to be fraudulent. When a person has a duty to speak, silence may be treated as a false statement. This can arise if a party who has knowledge of a fact fails to disclose it to another party who is justified in assuming its nonexistence. For example, if a real estate agent offers a client a pick-a-pay program with negative amortization, that real estate agent knows that the client will never own their home. Not only will the client be paying for it for the rest of their lives, but at the end of the never ending contract, the client will owe more than they did at the initial closing. These were the actual terms of the predatory loan which greatly harmed Plaintiff. This type of loan would never be allowed today.


## XI.    IN SUPPORT OF RICO CLAIM

83.     Defendant states that Plaintiff's claim of Racketeer Influenced and Corrupt Organizations Act violation falls woefully short is erroneous. Defendant states that Plaintiff's RICO charges start with Defendants at the origination of the Senior Loan and since it closed more than four years before the complaint was filed, would be barred by the four year RICO statute of limitations. Plaintiff is not charging defendant's with RICO beginning at the point of origination of the Senior Loan, as the senior loan is not the foreclosing document. Defendant's have foreclosed on the Plaintiff's equity line (2nd Deed of Trust). Plaintiff is also initiating RICO at the point that Plaintiff's note was securitized which was in January 2007. The four year statute of limitations won't be up until January 2011

84.     Defendant claims that the only defendant is the bank and that there can be no criminal enterprise consisting of only one entity.

85.     Upon securitization of Plaintiff's note and the reality that securitization constitutes a violation of US Federal R.I.C.O. Statutes [see Legal Notes below], Plaintiff can state without equivocation that the entire securitization process constitutes violations of Federal R.I.C.O. statutes, because:

86.     There is the requisite criminal or civil 'enterprise' – consisting of the sponsor/issuer, the trustees and the intermediary bank. These three parties work closely together to effect the securitization transaction.

(2) There are 'predicate acts' of:

        (a)   Mail fraud – using the mails for sending out materials among themselves and to investors.

        (b) Wire fraud – using wires to engage in fraud by communicating with investors.

        (c) Conversion – where there isn't proper title to collateral.

        (d) Deceit: misrepresentation of issues and facts pertaining to the securitization transaction.

        (e) Securities fraud: disclosure issues.

        (f) It entails loss of profit opportunity.

(g) It involves the making of false statements and or misleading representations about the value of the collateral.

(h) It entails stripping the originator/issuer of the ability to pay debt claims or judgment claims in bankruptcy court – a state of affairs that may apply where the sponsor is financially distressed and the cash proceeds of the transaction are significantly less than the value of the collateral.

a) There is also typically the requisite 'intent' by members of the enterprise – evident in knowledge (actual and inferable), acts, omissions, purpose (actual and inferable) and results. Intent can be reasonably inferred from:

(a) The existence of a sponsor that seeks to raise capital – and cannot raise capital on better terms by other means;

(b) The participation of an investment bank that has very strong incentives to consummate the transaction on any agreeable (but not necessarily reasonable) terms;

(c) Defendants are "persons" as defined by § 7701 of title 26 of the Internal Revenue Code;

(d) The conspiracy in the subject of this action has existed from date of application to the present, with the injuries and damages resulting there from continuing;

(e) Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitutes an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents;

(f) Each of the Defendants is an "enterprise Defendant";

OPPOSITION TO SUMMARY JUDGMENT - 23

(g)     The Forensic Loan Audit shows that Defendants are guilty of RICO operations dealing with fractional reserve lending in violation of law, good faith, and fair business dealings;

(h)     As a direct and proximate result of the actions of the Defendants, Plaintiff has and continues to suffer damages.

87.     Federal and state criminal statutes provide for the punishment of persons convicted of fraudulent activity. Interstate fraud and fraud on the federal government are singled out for federal prosecution. The most common federal fraud charges are for mail and wire fraud. Mail and wire fraud statutes criminalize the use of the mails or interstate wires to create or further a scheme to defraud (18 U.S.C.A. §§ 1341, 1342).

## XII.     FAILURE TO PROPERLY ANSWER DISCOVERY

88.     Plaintiff served Discovery upon WELLS FARGO. A copy should be on file with this Court.

89.     This Discovery sought to obtain specific and discoverable facts regarding loan practices, terms and conditions, issues of the trust, proof of funding, proof of injury, details of securitization resulting in unjust enrichment and harm to Plaintiff, and much more.

90.     WELLS FARGO failed to respond in good faith, only giving vague or evasive answers, without clear and substantive reasons why they should not answer. According to FRCP 56(f), summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to her opposition.

91.     This is yet another example of deprivation of due process. WELLS FARGO's refusal to provide essential information Plaintiff reasonably requested and has a right to obtain is grounds for denying their Motion for Summary Judgment as a matter of law.

## XIII.     TENDER CANNOT BE REQUIRED UNDER VOID CONDITION

92.     Defendant alleges that Plaintiff has not and cannot offer tender.

93.   <u>Plaintiff is not bound by the tender rule</u> in this action when she can properly demonstrate that the irregularities to the Trustee's Sale subjecting her to inequitable actions by the Defendants and thereby preclude her from owing any amount due to the actions by Defendants causing the break in chain of title and wrongful foreclosure. When the sale is totally void, a tender cannot be required.

94.   "It would be inequitable for the court to require a tender by Plaintiff to WELLS FARGO when "Similarly, when the person making a counter-claim or set-off against the beneficiary…it is deemed that they offset each other, and if the offset is equal to or greater that the amount due, a tender is not required…" *Osorio v. Rice*, 64 Cal Rptr. 2d 74, Cal. App. 4th Dist. 1997). Furthermore, no tender is required if… a judicial determination of the amount due or whether any amount is due. A judicial determination based on adherence to law will reveal that Defendants are not creditors and cannot prove standing, they caused breaks in the chain of title, and cannot validate that there is amount due them. See *More v. Calkins* (1890) 85 C 177, 24 P 729. See also *Stockton v Newman* (1957) 148 CA2d 558, 307 P2d 56. The requirement of tender is "not a complete defense to an action." See *Dickson, Carlson & Campillo v Pole* (2000) 83 CA4th 436, 99 CR2d 678.

95.   WELLS FARGO never offered a loan modification or any other workarounds encouraged by the federal government. This was a material breach of Cal. Civ. Code § 2923.5, and clearly evidenced that WELLS FARGO had no interest in providing relief and recourse from foreclosure, which prejudiced and harmed Plaintiff.

96.   With all the attendant fatal defects from inception, tender cannot be required. Defendant's claims that a valid tender is required to challenge foreclosure is yet another diversion in that they avoid the central issue of an illegal confession of judgment/cognovit note/adhesion contract followed by fatal breaks in the chain of title which renders the contract unenforceable as a matter of law. The tender rule is a moot issue. Equity doesn't apply in the tender rule where right and justice would be defeated. It cannot be applied when the Plaintiff's action is to set aside a void sale, specifically a wrongful foreclosure sale. This sale is not

voidable, <u>it's void on its face from inception</u>. Overall, Defendants have acted with unclean hands as is made evident with great specificity in the Verified Complaint.

97.     "California recognizes that: `Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention.' (*Times-Mirror Co. v. Superior Court*, 3 Cal.2d 309, 331 [44 P.2d 547].)

98.     Defendant has no standing to raise the issue of tender which is not applicable under these circumstances.

## XIV.   INDUSTRY-WIDE PRACTICES FOUND FRAUDULENT

99.     A recent flurry of national news articles on television and mainstream news programs exposing scandalous and criminal foreclosure practices by the major banks have revealed how they have used improper affidavits, fabricated loan documents, and robo-signers who never reviewed what they were signing in hundreds of thousands of foreclosures. This is clear and plain fraud. It only stands to reason that the practices of these Defendants are consistent with these reports. Additionally, it has come to light that lenders have been notorious for obtaining fabricated documents used to foreclose, supplied by a company called DocX. Their price list is attached as an exhibit. DocX is now under federal investigation. With this shocking information, this Court can clearly see the necessity to require a full adjudication of Plaintiffs' claims and fulfill its responsibility to protect the public from such deceptive practices.

100.    In a Financial Times article on Oct. 28, 2010, WELLS FARGO admitted "it had identified instances where foreclosure procedures did not adhere strictly to the required procedures". According to the article WELLS FARGO was to submit additional paperwork on 55,000 foreclosures to ensure their validity.

## XV.   WELLS FARGO NEVER HAD STANDING

101.   The forensic loan audit affidavit clearly indicates that WELLS FARGO was not is possession when they issued the Notice of Default in 12/09. Plaintiff challenges their standing which must be established by proof of creditor status or proof of authority to enforce on behalf of a party with creditor status.  Also, location of the actual Promissory Note and negotiations to purchase it is proof WELLS FARGO had no standing to foreclose.

102.   Foreclosure agents and servicers do not automatically have standing, *In re Scott*, 376 B.R. 285, 290 (Bankr.D.Idaho 2007); *Hwang*, 396 B.R. at 767, and must show authority to act for the party which does.

103.   Generally, a party without the legal right under applicable substantive law to enforce the obligation at issue, or pursuing an interest outside those protected by the law invoked or abstract questions more appropriately addressed legislatively, lacks prudential standing. *Doran v. 7-Eleven*, Inc., 524 F.3d 1034, 1044 (9th Cir.2008).

104.   The standing doctrine "involves both constitutional limitations on federal and state court jurisdiction and prudential limitations on its exercise. "*Kowalski v. Tesmer, 543 U.S. 125, 128-29, 125 S. Ct. 564, 160 L.Ed. 2d 519 (2004)(quoting Warth v. Seldin, 442 U.S. 490, 498, 95 S. Ct. 2197, 45 L.Ed. 2d 343 (1975)).*

105.   See *US v. Hayes* 515 U.S. 737 where the esteemed court held "[W]e are required to address the issue [standing] even if the courts below have not passed on it, and even if the parties fail to raise the issue before us.  The courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines'."

106.   Constitutional standing under Article III requires, at a minimum, that <u>a party must have suffered some actual or threatened injury</u> as a result of the defendant's conduct, that <u>the injury be traced to the challenged action</u>, and that it is likely to be redressed by a favorable decision. (*Valley Forge Christian Coll. V. Am. United for Separation of Church and State, 454 U.S. 464, 472, 102 S. Ct. 752, 70 L Ed. 2d 700(1982)(citations and internal quotations omitted)).* Beyond the Article III requirements of injury in fact, causation, and redressibility, <u>the</u>

creditor must also have prudential standing, which is a judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. *(Warth v. Seldin, 442 U.S. 490, 498, 95 S. Ct. 2197, 45 L.Ed. 2d 343 (1975)*. As a prudential matter, a plaintiff must assert "his own legal interest as the real party in interest". *(Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir. 2004), as found in F.R.Civ.P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest.")*

107. Defendant WELLS FARGO has yet to prove such injury, and Summary Judgment cannot be granted.

## XVI.   DECLARATORY RELIEF WARRANTED

108. Defendant states that the Declaratory Relief Claim is duplicative of other claims.

109. A Declaratory Judgment is proper when: (1) An actual controversy exists, (2) irreparable harm and injury is imminent and inevitable, (3) plaintiff has a direct, substantial and present interest, and (4) the declaration sought will be of practical help in ending the controversy.

110. An actual controversy exists between Plaintiff and Defendants, both individually and severally, in that Defendants have tacitly alleged they held the original note(s); and had the authority to act upon it. An actual controversy exists as to whether Plaintiff was unknowingly stripped of her due process rights in execution of the Deed of Trust, due to the fact said Deed of Trust performs as cognovit note(s).

111. Plaintiff has incurred significant damage by the conduct of Defendants and will suffer additional and irreparable harm/damage should Defendants be allowed to continue to act, absent granting Plaintiff Declaratory Relief, with additional litigation as imminent and inevitable.

112. Due to the willful and malicious acts against Plaintiff by WORLD SAVINGS BANK FSB for inducement into a cognovit note, and due to the willful and malicious acts by Defendants WACHOVIA and WELLS FARGO for fraudulently executing documents and taking deceptive actions to blindside Plaintiff to effectuate a fraudulent foreclosure on her

property, and due to violations and breach of contract as a result of the undisclosed securitization of Plaintiff's loan documents, Plaintiff having set forth the claims and facts for relief against Defendants, moves this Court to acknowledge that Declaratory Judgment is warranted for the following:

a.  For exemplary and punitive damages to be determined by the Court or Jury for Fraudulent Inducement to the contracts and other violations of law aforementioned herein;

b. Actual Economic and Non-Economic Damages

c. Punitive damages for illegally evicting Plaintiff from her home.

d. Restoring Plaintiff to her home.

e. For an Order declaring that the Mortgage and Note Contracts and the Assignment of Mortgage in this matter are Null and Void.

f. For an Order compelling Defendant to return the original Promissory Note to Plaintiff, in Court, for inspection and review of signatures and verify the representations made therein.

g.  For an order that if the original, unaltered Note is not available, that Defendant be ordered to pay Plaintiff the face value of the Note with interest, plus escrow and all the bond/security derivatives of the Note.

h. For an Order canceling the original Promissory Note under election of remedies for Fraud in Fact and a declaration and determination that Plaintiff is the rightful holder of title to the Property.

i. for an Order awarding compensatory damages to be determined for time spent in legal research and composition of this action comparable to standard Attorneys allowances from Defendant on all counts.

j.  For an order granting injunctive relief from any parties moving against the Plaintiff and/or their real estate, including the property in question, without first proving to this Court that all the lawful requirements and statutory requirements for foreclosure and transfer of property have been met.

k.  For an Order compelling Defendants or related parties in possession of Plaintiff's Bonded Promissory Notes to return them.

l. FOR AN ORDER FOR DEFENDANTS TO RETURN ORIGINAL, UNALTERED SECURITY INSTRUMENTS WITH ESCROW AND EQUITY IF FORECLOSURE JUDGMENT IS SUSTAINED.

113.   The Court has an obligation to protect the rights of the public against abusive and fraudulent corporate business practices. Declaratory judgment is warranted to make a determination of rights in this case.

## CONCLUSION

114.   Defendant's attorney Christopher Car claims that none of "these purported facts give rise to any actionable claim against the bank." Fraud is an actionable claim, and can be proven. Contract of adhesion is an actionable claim and can be proven. Securitization is illegal, and can be proven. Fraudulent sale of Plaintiff's property is an actionable claim and can be proven.

115.   Courts have ruled that to survive Motion for Summary Judgment, the non-moving party need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial. "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ." *Anderson v. Liberty Lobby, Inc.*, ante, at 250. This accurately describes Plaintiff's case. She has provided abundant evidence which support her claims against WELLS FARGO, more than sufficient that would result in a jury deciding in her favor, thereby requiring that this case go to trial.

116.   Plaintiff reminds this Court that she was never served Defendant's Motion for Summary Judgment. Defendant has offered no proof of service, only a questionable Affidavit which states that rather than given to someone at Plaintiff's residence, the documents were left at the door.

117.   The documents could not have been left at the door because people go in and out of the home several times a day and would have seen it. Plaintiff only learned of it by accessing

Date: Dec. 9, 2010

Respectfully Submitted,

TANYA D. DENNIS

OPPOSITION TO SUMMARY JUDGMENT - 32

November 10th, 2010

Tanya D. Dennis
2027 Woolsey Street
Berkeley, CA 94703

Ms. Dennis,

Thank you for allowing us to conduct your forensic loan audit. We have already begun to audit the three loans that you have on your property located at 2027 Woolsey Street, Berkeley, CA 94703. We have discovered numerous breaks in the assignments of your first and second mortgages, as well as numerous other violations. Since your first and second mortgages are securitized it we will need an additional twenty one days to complete the audit in its entirety. Here are points of reference for you to use in your motions.

Wells Fargo Home Mortgage was not in possession of the mortgage note when they recorded a Notice of Default on December 17th, 2009

World Savings bank did not file any of the proper assignment s for the first or second mortgages when Wells Fargo Home Mortgage became the servicer

Wells Fargo Home Mortgage did not notify the junior lean holders of the NOD and NTS

Both the first mortgage and second mortgages have been securitized with Fidelity Select Biotechnology # 316390772and Fidelity Advisor Global Capital # 751

First mortgage securitized November 2009

Second Mortgage securitized January 2007

Again these are just brief highlights from our research and you will have a full audit as stated above. Please contact us with any questions.

Respectfully,

J.D. Davis
Director
Asset Management Team

