United States District Court
For the Northern District of California

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8    TANYA D. DENNIS,                        No. 10-01596 CW

9         Plaintiff,                         ORDER GRANTING
                                             MOTION FOR SUMMARY
10        v.                                 JUDGMENT AND
                                             DENYING PLAINTIFF'S
11   WACHOVIA BANK, FSB, WELLS FARGO BANK,   MOTIONS
     N.A., AND DOES 1-5,
12
          Defendants.
13   _____/

14

15        This case involves the foreclosure of Plaintiff Tanya D.

16   Dennis' residence by Defendant Wachovia Mortgage,[1] a division of

17   Wells Fargo Bank, N.A.  Defendant moves for summary judgment on all

18   of Plaintiff's claims.  Docket # 42.  Plaintiff opposes the motion.

19   Plaintiff has filed a motion for injunctive relief (docket # 44),

20   an emergency motion for preliminary injunction (docket # 56), and a

21   motion for leave to file in forma pauperis her petition for writ of

22   mandamus to order this Court to rule on her motions for a

23   preliminary injunction (docket # 71).  The motions were taken under

24   submission on the papers.  Having considered all the papers filed

25   by the parties, the Court grants Defendant's motion for summary

26   _____

27        [1]Defendant identifies itself as Wachovia Mortgage.  The Court
     will assume that this is Defendant's correct name, rather than the
     name provided in the caption of Plaintiff's complaint, and that its
28   motion applies to Wells Fargo Bank as well.

1  judgment and denies Plaintiff's motions.

2                              BACKGROUND

3       The following facts are taken from the Court's Order Denying

4  Plaintiff's Motion for a Temporary Restraining Order and the

5  documents submitted by Plaintiff and Defendant.

6       In February, 2006, Plaintiff refinanced her home located at

7  2027 Woolsey Street, in Berkeley, California (the property) with a

8  $406,000 loan (senior loan) from Wachovia Mortgage, which was then

9  known as World Savings Bank.  Comp. ¶ 13.  Repayment of the senior

10 loan was secured by a first deed of trust on the property.  Id.  On

11 October 16, 2006, Plaintiff obtained an equity line of credit

12 (ELOC) with a credit limit of $25,000, also from Wachovia Mortgage.

13 Comp. ¶ 15.  Repayment of the ELOC was secured by a second deed of

14 trust on the property.  Id.  The interest rate on the ELOC was

15 8.024%, and could go as high as 12.095%.  Id.  It is not clear when

16 but, at some point, Plaintiff stopped making payments on both

17 loans.

18      Plaintiff received a notice entitled Substitution of Trustee

19 dated December 16, 2009, substituting California Reconveyance

20 Corporation for Golden West Financial Savings as the trustee on the

21 deed of trust securing the ELOC.  Comp. ¶ 17.  Plaintiff received a

22 Notice of Default and Election to Sell, recorded on December 17,

23 2009, referring to the deed of trust securing the ELOC.  Comp.

24 ¶ 18.  Plaintiff received a notice of trustee's sale dated March

25 28, 2010 stating that her property would be sold on April 8, 2010.

26 Comp. ¶ 19.

27      On April 7, 2010, Plaintiff filed, in Alameda County Superior

28                                  2

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Court, a motion for a temporary restraining order (TRO) to prevent

2    Defendant from foreclosing on her property. The state court

3    entered a TRO, setting April 21, 2010 as the hearing date on an

4    Order to Show Cause (OSC) regarding a preliminary injunction and

5    enjoining the sale until that date. On April 14, 2010, Defendant

6    removed Plaintiff's complaint to this Court. The state court TRO

7    expired by its own terms on April 21, 2010. According to

8    Defendant, the foreclosure sale on the deed of trust for the ELOC

9    was held on April 30, 2010 and, because there were no bidders, the

10   property reverted to Defendant. On May 3, 2010, Plaintiff filed a

11   motion for a TRO in this Court, which was denied on May 4, 2010.

12       In her complaint, Plaintiff includes allegations that

13   Defendant does not have standing or authority to foreclose on her

14   property because it does not have the original promissory note and

15   deed of trust.[2]  She also alleges that Cal-Western lacks authority

16   to act as attorney-in-fact for Defendant because the substitution

17   of trustee form is invalid on its face, and that Defendant cannot

18   take possession of her property through foreclosure on the ELOC

19   without taking action on the senior loan. Comp. ¶ 41. In

20   addition, Plaintiff alleges that the foreclosure was improper

21   because Defendant securitized her loan without providing notice to

22   her or obtaining her approval. Comp. ¶¶ 54, 55. Finally,

23   Plaintiff alleges that the deeds of trust she signed contained

24   _____

25       [2]Plaintiff does not indicate whether she claims that Defendant
     does not have the original documents for either loan or just for
26   the ELOC. Because Defendant foreclosed only on the deed of trust
     securing repayment of the ELOC, the ELOC loan documents are the
27   only documents relevant to Plaintiff's claims.

28                                    3

United States District Court
For the Northern District of California

1  several hidden and disguised provisions, creating a cognovit note,[3]

2  which deprived her of her property without due process.  Comp.

3  ¶¶ 68-84.  Because the loan documents contained cognovit clauses,

4  they were contracts of adhesion.  Comp. ¶¶ 85-94.

5      Based on these allegations, Plaintiff asserts the following

6  causes of action: (1) breach of contract; (2) fraudulent

7  misrepresentation and failure to disclose; (3) quiet title;

8  (4) violation of the Racketeer Influenced and Corrupt Organization

9  (RICO) Act based on mail and wire fraud; and (5) a declaratory

10 judgment that the foreclosure sale of Plaintiff's property is void.

11 In her general allegations, Plaintiff makes passing reference to

12 the Truth in Lending Act (TILA) and the Fair Debt Collection

13 Practices Act (FDCPA).  Defendant moves for summary judgment on any

14 potential claims under the TILA or FDCPA and Plaintiff does not

15 address Defendant's arguments or these statutes in her opposition

16 to Defendant's motion.  Thus, any claims based on the TILA and

17 FDCPA are adjudicated in Defendant's favor.

18                         LEGAL STANDARD

19     Summary judgment is properly granted when no genuine and

20 disputed issues of material fact remain, and when, viewing the

21 evidence most favorably to the non-moving party, the movant is

22 clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

23 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

24 Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

25 ───────────────

26     [3]A "cognovit note" contains provisions which attempt, in
   advance of any legal controversy, to authorize the entering of
   judgment without notice and hearing.  Isbell v. County of Sonoma,
27 21 Cal. 3d 61, 76 (1978).

28                               4

1    1987).

2        The moving party bears the burden of showing that there is no

3    material factual dispute.   Therefore, the court must regard as true

4    the opposing party's evidence, if supported by affidavits or other

5    evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815

6    F.2d at 1289.   The court must draw all reasonable inferences in

7    favor of the party against whom summary judgment is sought.

8    <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

9    587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d

10   1551, 1558 (9th Cir. 1991).

11       Material facts which would preclude entry of summary judgment

12   are those which, under applicable substantive law, may affect the

13   outcome of the case.   The substantive law will identify which facts

14   are material.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

15   (1986).

16       Where the moving party does not bear the burden of proof on an

17   issue at trial, the moving party may discharge its burden of

18   production by either of two methods:

19       The moving party may produce evidence negating an
         essential element of the nonmoving party's case, or,
20       after suitable discovery, the moving party may show that
         the nonmoving party does not have enough evidence of an
21       essential element of its claim or defense to carry its
         ultimate burden of persuasion at trial.
22
     <u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d
23
     1099, 1106 (9th Cir. 2000).
24
25       If the moving party discharges its burden by showing an

26   absence of evidence to support an essential element of a claim or

27   defense, it is not required to produce evidence showing the absence

28

United States District Court
For the Northern District of California

5

of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

DISCUSSION

I. Contract Claims

A. Breach of Contract

As Defendant points out, in her complaint and opposition to the motion for summary judgment, Plaintiff does not indicate which contract or contracts were breached or how Defendant breached these contracts.  In Plaintiff's first motion for preliminary injunction,

6

United States District Court
For the Northern District of California

1   she clarifies that the breach was the improper transfer of her loan

2   documents, causing breaks in the chain of title, and the

3   securitization of the note.  <u>See</u> Doc. # 44 at 12.  However,

4   Plaintiff fails to identify a provision of a contract which would

5   be violated by these actions, or any other conduct by Defendant

6   that could be considered to be nonperformance of a contract.  In

7   her complaint, Plaintiff also alleges that the loan documents are

8   void and unenforceable based on Defendant's non-disclosure of

9   cognivit clauses.  Defendant's motion for summary adjudication on

10  the breach of contract claim is granted.  <u>See</u> <u>Reichert v. General</u>

11  <u>Ins. Co. of America</u>, 68 Cal. 2d 822, 830 (1968) (elements of breach

12  of contract claim are a contract; plaintiff's performance or excuse

13  for nonperformance; defendant's breach; and resulting damages).

14      B. Unenforceable Contract

15      Under California law, "[i]f the court as a matter of law finds

16  the contract or any clause of the contract to have been

17  unconscionable at the time it was made the court may refuse to

18  enforce the contract, or it may enforce the remainder of the

19  contract without the unconscionable clause, or it may so limit the

20  application of any unconscionable clause as to avoid any

21  unconscionable result."  Cal. Civ. Code § 1670.5(a).

22      Unconscionability has both a procedural and a substantive

23  component.  Both components must be present before a court may

24  refuse to enforce a contract.  <u>Armendariz v. Found. Health</u>

25  <u>Psychcare Servs.</u>, 24 Cal. 4th 83, 114 (2000).  However, they need

26  not be present to the same degree; "the more substantively

27  oppressive the contract term, the less evidence of procedural

28                              7

United States District Court
For the Northern District of California

1  unconscionability is required to come to the conclusion that the

2  term is unenforceable, and vice versa." Id.

3      The contract provisions Plaintiff cites in her complaint,

4  Comp. ¶¶ 70-73, are not cognivit clauses or unconscionable.

5  Although Plaintiff cites them out of context, the provisions appear

6  to be typical for loan documents and provide, among other things,

7  that the borrower owns the property that is being used as security

8  for the loan, that there are no encumbrances on the property other

9  than those that are recorded, that the borrower will pay the loan

10 according to its terms, and, if the borrower does not, the property

11 may be sold at a trustee's sale.  Accordingly, Plaintiff's claim

12 that the loan agreements are unenforceable or void is adjudicated

13 in favor of Defendant.

14 II. Misrepresentation and Failure to Disclose

15     Plaintiff claims that Defendant improperly failed to disclose

16 to her that, by signing the loan documents, she was waiving her

17 rights to ownership of her property.  Comp. ¶ 132.  In her

18 opposition, Plaintiff elaborates that, had she known what the

19 cognivit phrases meant and the interest rate structure of the loan,

20 she would have never agreed to the loan.

21     Defendant argues that this claim is barred by the three-year

22 statute of limitations for fraud claims and that it is preempted by

23 the Home Owners' Loan Act (HOLA), 12 U.S.C. §§ 1461 et seq.

24     The elements of fraud under California law are as follows:

25 (1) a misrepresentation; (2) knowledge of the falsity; (3) intent

26 to defraud or to induce reliance; (4) justifiable reliance; and

27 (5) resulting damage.  Seeger v. Odell, 18 Cal. 2d 409, 414 (1941);

28

8

United States District Court
For the Northern District of California

Cal. Civ. Code § 1709.  The misrepresentation element can be demonstrated by a fraudulent concealment of facts.  <u>Outboard Marine Corp. v. Superior Court</u>, 52 Cal. App. 3d 30, 37 (1975).  California Code of Civil Procedure § 338(d) provides that an action for fraud must be commenced within three years of the fraud, except that the "cause of action of the case is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

Under the HOLA, the Office of Thrift Supervision (OTS) has authority to regulate federal savings associations.  12 U.S.C. § 1463(a).[4]  Based on this authority, the OTS promulgated 12 C.F.R. § 560.2, which provides:

> OTS hereby occupies the entire field of lending regulation for federal savings associations.  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.  Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities . . . .

<u>Id.</u> § 560.2(a).

Paragraph (b) of § 560.2 lists types of state laws that are preempted under the HOLA and the OTS regulations.  It provides that state laws are preempted if they purport to impose requirements on federal savings banks regarding the following: terms of credit, including amortization of loans, the deferral and capitalization of

---

[4]Because Plaintiff's loan was originated by World Savings Bank, which was a federal savings bank subject to the HOLA and the OTS regulations, the HOLA applies to her claims even though Wells Fargo is a federally chartered bank not subject to the HOLA.  <u>Khan v. World Sav. Bank</u>, 2011 WL 90765, *3 (N.D. Cal.).

1   interest and adjustments to the interest rate (§ 560.2(b)(4));

2   loan-related fees, including late charges and servicing fees

3   (§ 560.2(b)(5)); disclosure and advertising, including laws

4   requiring specific content to be included on credit-related forms

5   and documents (§ 560.2(b)(9)); and processing, origination,

6   servicing, sale or purchase of, or investment or participation in,

7   mortgages (§ 560.2(b)(10)).

8        Paragraph (c) is a savings clause, which provides that state

9   laws, including tort laws, that "only incidentally affect the

10  lending operations of Federal savings associations" are not

11  preempted.

12       The OTS provides the following guidance on how to determine

13  whether section 560.2 preempts state laws:

> When analyzing the status of state laws under § 560.2,
> the first step will be to determine whether the type of
> law in question is listed in paragraph (b).  If so, the
> analysis will end there; the law is preempted.  If the
> law is not covered by paragraph (b), the next question is
> whether the law affects lending.  If it does, then, in
> accordance with paragraph (a), the presumption arises
> that the law is preempted.  This presumption can be
> reversed only if the law can clearly be shown to fit
> within the confines of paragraph (c).  For these
> purposes, paragraph (c) is intended to be interpreted
> narrowly.  Any doubt should be resolved in favor of
> preemption.

21  OTS, Lending and Investment, Final Rule, 61 Fed. Reg. 50,951,

22  50,966-67 (Sep. 30, 1996).

23       Preemption under the HOLA extends to claims of fraud when they

24  are based upon lending practices addressed in § 560.2(b).  Amaral

25  v. Wachovia Mortg. Corp., 692 F. Supp. 2d 1226, 1238 (E.D. Cal.

26  2010).

27       In her opposition, Plaintiff argues that she just discovered

28                                    10

1   the fraud last year.  Plaintiff provides no other facts to support

2   this statement.  The Court need not decide whether this claim is

3   timely because, as discussed below, it is preempted.

4       Plaintiff's only argument against preemption is that fraud is

5   a federal claim that cannot be preempted.  However, as indicated

6   above, fraud is a common law state tort claim.  Plaintiff's fraud

7   claim is based upon Defendant's concealing material facts about the

8   loan documents, interest rate and securitization.  These

9   allegations fit squarely within §§ 560(2)(b)(4), (9), and (10).

10  Because Plaintiff's fraud claim bears on lending activities

11  contemplated by § 560.2(b), it is preempted.  Defendant's motion

12  for summary adjudication of this claim on grounds of preemption is

13  granted.

14  III. Quiet Title

15      Plaintiff asks that title in the property be quieted in her

16  favor.  To state a claim for quiet title under California law, a

17  plaintiff's complaint must contain: (1) a description of the

18  property; (2) the title of the plaintiff and its basis; (3) the

19  adverse claims to that title; (4) the date as of which the

20  determination is sought; and (5) a prayer for relief of quiet

21  title.  Cal. Civ. Proc. Code § 761.020.  In addition, a plaintiff

22  seeking to quiet title in the face of foreclosure must allege

23  tender of an offer of the amount borrowed.  Mangindin v. Washington

24  Mut. Bank, 637 F. Supp. 2d 700, 712 (N.D. Cal. 2009); Arnolds Mgmt.

25  Corp. v. Eischen, 158 Cal. App. 3d 575, 578-79 (1984) (claim to set

26  aside trustee's sale must be accompanied by offer to pay full

27  amount of debt for which the property was security).

28

United States District Court
For the Northern District of California

1    Defendant argues that the claim for quiet title fails because

2    Plaintiff has not alleged or argued that she can tender the amount

3    of the indebtedness.  Plaintiff, without citing authority, responds

4    that she is not bound by the tender rule because the irregularities

5    in the trustee's sale means she owes nothing.

6    Plaintiff's argument that she is not bound by the tender rule

7    is incorrect.  As explained in Arnolds Mgmt., "in the context of a

8    defaulting trustor's attack upon an irregular sale, . . . once the

9    trustor fails to effectively exercise his right to redeem, the sale

10   becomes valid and proper.  A cause of action [regarding the]

11   irregular sale fails unless the trustor can allege and establish a

12   valid tender."  158 Cal. App. 3d at 578.  Furthermore, to vest

13   title in a defaulting borrower without tender of the loan amount

14   would be inequitable to the lender because it would not only be

15   deprived of the money it loaned to the borrower, it would also be

16   deprived of title to the property it took as security for the loan.

17   Therefore, Plaintiff's claim for quiet title fails.

18   Defendant's motion for summary adjudication of this claim is

19   granted.

20   IV. RICO

21   To state a RICO claim, a plaintiff must allege that the

22   defendant (a) received income derived from a pattern of

23   racketeering activity and used the income to acquire or invest in

24   an enterprise engaged in interstate commerce; (b) acquired or

25   maintained an interest in, or control of, an enterprise engaged in

26   interstate commerce through a pattern of racketeering activity;

27   (c) while employed by an enterprise engaged interstate commerce,

28                                    12

United States District Court
For the Northern District of California

caused that enterprise to conduct or participate in a pattern of
racketeering activity; or (d) conspired to engage in any of these
activities.  Izenberg v. ETS Servs. LLC, 589 F. Supp. 2d 1193, 1201
(C.D. Cal. 2008).  There are four essential elements to a RICO
claim: (1) a pattern of racketeering activity, (2) the existence of
an enterprise engaged in or affecting interstate or foreign
commerce, (3) a nexus between the pattern of racketeering activity
and the enterprise and (4) an injury to the plaintiff's business or
property by reason of the above.  Sedima S.P.R.L. v. Imrex Company,
Inc. et al., 473 U.S. 479 (1985).  An enterprise is any individual,
partnership, corporation, association, or other legal entity, or a
group of individuals associated in fact though not a legal entity.
Izenberg, 589 F. Supp. 2d at 1201.  A pattern of racketeering
activity is a series of criminal acts defined by the statute,
consisting of the commission of at least two acts within a ten-year
period.  Id.  A plaintiff must also plead that the defendant's
violation was the but-for and proximate cause of a concrete
financial injury.  Id.

     In this cause of action, Plaintiff alleges that there is a
"civil enterprise -- consisting of the sponsor/issuer, the trustees
and the intermediary bank.  These three parties work closely
together to effect the securitization transaction."  Comp. ¶ 119.
The fraud consists of "misrepresentations of issues and facts
pertaining to the securitization transaction" and "the making of
false statements and or misleading representations about the value
of the collateral."  Id.  Plaintiff also alleges that "Defendants'
actions and use of multiple corporate entities, multiple parties,

13

United States District Court
For the Northern District of California

and concerted and predetermined acts and conduct specifically
designed to defraud Plaintiff constitutes an 'enterprise,' with the
aim and objective of the enterprise being to perpetrate a fraud
upon the Plaintiff through the use of intentional nondisclosure,
material misrepresentation, and creation of fraudulent loan
documents."  Comp. ¶ 121.

In her opposition, Plaintiff clarifies that the fraudulent act
upon which her RICO claim is based is the securitization of her
promissory note, which she claims occurred in January, 2007.  Pl.'s
Aff. in Opp. ¶¶ 83, 85.  However, the evidence submitted by
Plaintiff does not prove that the loan was securitized.  Plaintiff
submits two "forensic audits."  The first is an audit prepared by
Jarrell Davis of AMR Management Group (Docket # 60).  Mr. Davis
states that the ELOC was securitized in January, 2007 to Fidelity
Select Biotechnology #316390772.  However, no evidence is submitted
of this securitization.  The second forensic audit was prepared by
Douglas Rian and Elizabeth Jacobson of Certified Forensic Loan
Auditors, LLC (Docket # 61).  Mr. Rian and Ms. Jacobson found that
the ELOC was not securitized.  See Rian and Jacobson Audit at 9
("World Savings Bank did not sell its loans into securitization");
12 ("This loan was not Securitized.").  Defendant submits a
declaration from its attorney, Christopher Carr, who states that
the original notes and deeds of trust are in his possession and
were never sold to third parties.

Although on a summary judgment motion disputes of fact are to
be resolved in favor of the non-moving party, here Plaintiff's own
evidence fails to prove her assertion that the ELOC was

14

securitized.   Therefore, the Court resolves this dispute in favor
of Defendant.   Furthermore, Plaintiff has not established that
securitization of the loan is a fraudulent act.

Thus, Plaintiff's RICO claims fails because the evidence
establishes that Defendant did not securitize her loan and, even if
it had done so, Plaintiff has not proved that the securitization of
her loan constitutes a pattern of racketeering.   For these reasons,
Defendant's motion for summary adjudication of this claim is
granted.

## V. Standing to Foreclose

Plaintiff implies that Defendant did not have standing to
foreclose because it did not possess the original loan documents.
As discussed above, Defendant states that its attorney is in
possession of the original loan documents.   And, even if Defendant
did not possess the original documents, its standing to foreclose
would not be affected.   As stated in the Court's June 4, 2010 Order
Denying Plaintiff's Application for a TRO, possession of the
original note does not affect the validity of a non-judicial
foreclosure sale.   Roque v. Suntrust Mortg., Inc., 2010 WL 546896,
*3 (N.D. Cal.) ("Uniformly among courts, production of the note is
not required to proceed in foreclosure and similarly no production
of any chain of ownership is required.").

Therefore, any claim that Defendant lacks standing to
foreclose is summarily adjudicated in favor of Defendant.

## VI. Declaratory Relief

Plaintiff seeks a declaratory judgment determining the rights
of Plaintiff and Defendant "due to the controversy arising as it

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  relates to the genuine deed of trust, genuine promissory note, and

2  any and all subsequent documents, correspondence, and alike,

3  Plaintiff has detailed rights and duties and Defendants have

4  disputed these relative to the claims as presented herein."  Comp.

5  ¶ 96.

6      The Declaratory Judgment Act (DJA) permits a federal court to

7  "declare the rights and other legal relations" of parties to a case

8  of actual controversy.  28 U.S.C. § 2201; Wickland Oil Terminals v.

9  Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986).  The "actual

10 controversy" requirement of the DJA is the same as the "case or

11 controversy" requirement of Article III of the United States

12 Constitution.  American States Ins. Co. v. Kearns, 15 F.3d 142, 143

13 (9th Cir. 1993).  Under the DJA, a two-part test is necessary to

14 determine whether a declaratory judgment is appropriate.  Principal

15 Life Insurance Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005).

16 First, the court must determine if there exists an actual case or

17 controversy within the court's jurisdiction.  Id.  Second, if so,

18 the court must decide whether to exercise its jurisdiction.  Id.

19     Because all causes of action alleged by Plaintiff have been

20 adjudicated in favor of Defendant, no case or controversy exists

21 between the parties.  Therefore, Defendant's motion for summary

22 adjudication of the claim for declaratory relief is granted.

23                          CONCLUSION

24     For the foregoing reasons, Defendant's motion for summary

25 judgment is granted.  Docket # 42.  Plaintiff's motions for a

26 preliminary injunction (docket ## 44 and 56) must be denied because

27 she has not succeeded on the merits of her claims.  See Rodeo

28                              16

United States District Court
For the Northern District of California

Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987) (party moving for preliminary injunction must demonstrate either (1) probable success on the merits and the possibility of irreparable harm, or (2) that there exist serious questions regarding the merits and the balance of hardships tips sharply in its favor).  Plaintiff's motion to file in forma pauperis her petition for writ of mandamus is denied as moot.  Docket # 71. Judgment shall enter in favor of Defendant. Both parties shall bear their own costs of suit.

   IT IS SO ORDERED.

Dated:1/19/2011

_____
CLAUDIA WILKEN
United States District Judge

17